UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DARNELL FLEMMING, et al.,

Plaintiffs,

v.

SCOTT PARNELL, et al.,

Defendants.

CASE NO. C13-5062-BHS

ORDER DENYING
DEFENDANTS' MOTION
TO QUASH

This matter comes before the Court on Defendant Scott Parnell's ("Parnell")

motion to quash Plaintiffs' subpoena *duces tecum* issued to third-party Unitus

Community Credit Union ("Unitus"). Dkt. 11. The Court has considered the pleadings

filed in support of and in opposition to the motion and the remainder of the file and

hereby denies the motion for the reasons stated herein.

## I. PROCEDURAL & FACTUAL BACKGROUND

On January 29, 2013, Plaintiffs Darnell Fleming ("Fleming") and MAG

Enterprises, LLC ("MAG") filed suit against Defendants Parnell and Samson Sports,

LLC ("Samson"), a company over which Parnell has complete domination and control.

Dkt. 1. The complaint seeks (1) a declaration of noninfringement of copyrights; (2)

declaration of invalidity of copyrights; (3) declaration of ownership of copyrights; (4)

breach of fiduciary duties; and (5) dissolution of partnership, accounting and equitable

distribution.  *Id*. at 1. The allegations in the complaint involve the formation of a

partnership between Plaintiffs and Defendants to design, manufacture and sell an

American with Disabilities Act ("ADA") compliant access ramp system.  Dkt. 1 at 5.

Regarding the formation of the partnership, Fleming alleges:

> Fleming and Parnell agreed to form a partnership ("the partnership")
> to design, manufacture and sell an ADA compliant access ramp
> system. Samson, managed by Parnell, was the managing general partner
> owning 51% of the partnership. MAG owned the remaining 49% of the
> partnership and had the responsibility of providing the initial funding,
> invoicing, collecting partnership income, paying partnership expenses, as
> well as maintaining licenses, insurance and reporting of sales and income
> taxes. MAG's responsibilities through Fleming, due to his expertise in the
> ADA access ramps, included allowing the partnership to use Fleming's
> ADA access ramp design, including Fleming's copyrighted original
> drawings. Fleming was in charge of guiding the construction process,
> ensuring usability and code compliance as well as utilization of Fleming's
> contacts with mobile/modular builders and users, and guidance in the
> marketing and production of the ADA access ramp system.

*Id*.  Ultimately, after the partnership completed two phases of the construction and

fabrication of the ramp, Samson seized the technical drawings of the access ramp system.

*Id*. at 6-7. Samson, through Parnell's sister, Viki Ballous, then filed copyright registration

applications for many of the technical drawings without the consent or knowledge of

Fleming. *Id*. at 7. MAG and Fleming withdrew from the partnership and demanded a

partnership accounting, which Defendants failed to provide.  *Id*.  In relevant part, the

complaint also alleges that:

> Samson, and Parnell through his dominion and control of Samson and thus
> of the partnership, have breached fiduciary duties owed to Plaintiffs by
> misappropriating and/or converting partnership assets, failing to account for
> use and disposition of partnership assets, and commingling with Samson's
> own accounts, partnership assets; that these breaches directly, foreseeably,
> and proximately caused damage to Plaintiffs.

*Id*. at 13–14 .

On March 6, 2013 Defendants filed an answer, affirmative defenses and counterclaims to Plaintiffs' complaint.  Dkt 7.  On March 29, 2013, Plaintiffs filed an answer to Defendants' counterclaims. Dkt. 9.

On April 10, 2013, Kurt M. Rylander, attorney for Plaintiffs, issued the subpoena to Unitus ordering it to produce all bank records regarding Defendants Parnell and Samson.  *See* Dkt. 12-1.  Plaintiffs' subpoena seeks cancelled checks, bank statements and other financial records for all bank accounts in the name of Samson Sports, LLC and various other accounts with the "Samson" name (collectively, the "Samson bank records") and cancelled checks, bank statements and other financial records for all bank accounts in the name of Scott D. Parnell.  *See* Dkt. 12-1 at 5.

On April 19, 2013, Plaintiffs filed a first amended reply to counterclaims.  Dkt. 14. On May 6, 2013, Plaintiffs filed a response opposing Defendants' motion to quash.  Dkt. 17. On May 9, 2013, Defendants filed reply.  Dkt. 19.

On May 30, 2013, the Court signed and issued the parties' proposed stipulated protective order.  Dkt. 22.  Among other provisions, the stipulated protective order contains a provision that certain documents can be treated as information for "Attorney's Eyes Only."  *Id*. at 3.

## II. DISCUSSION

Parnell resists the subpoena primarily on grounds that his personal bank accounts under the name "Scott D. Parnell" are "accounts used by Parnell and his wife exclusively

1   for their personal, household and family expenses."  Dkt. 11 at 4.  Parnell argues this

2   "highly personal" information is not relevant to this lawsuit.  *Id.* Parnell essentially

3   claims that Fleming's allegations are not sufficient to demonstrate that information from

4   his personal bank accounts would be relevant to the instant action. *See* Dkt. 11.

5        Fleming argues that Parnell's motion should be denied because relevancy must be

6   broadly construed to allow Plaintiffs to attain accurate and complete information

7   necessary to adjudicate or settle claims. Dkt. 17 at 5.  He maintains that courts have "long

8   held the literal scope of the pleadings does not define 'relevance' for discovery, but rather

9   it is the subject matter of the lawsuit which governs ...."  *Id.*  Even so, Fleming argues

10  that his "pleadings literally cover Parnell's personal finances, making them directly

11  relevant ...." *Id.* at 7.

12  **A.     Legal Standards**

13       All discovery is subject to the limitations imposed by Fed. R. Civ. P. 26.  In

14  defining the scope and limits of discovery, Fed. R. Civ. P. 26(b)(1) permits discovery on

15  matters relevant to the parties' claims and defenses.  "For good cause, the court may

16  order discovery of any matter relevant to the subject matter involved in the action."  Fed.

17  R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at trial if the discovery

18  appears reasonably calculated to lead to discovery of admissible evidence."  *Id.*

19       Fed. R. Civ. P. 26(b)(2)(C)(iii) requires a court to limit discovery that is otherwise

20  allowed by the rule, if the court determines that the burden of the proposed discovery

21  outweighs its likely benefit, considering the needs of the case or the importance of the

22  discovery in resolving the issues.  Fed. R. Civ. P. 26 also gives district courts broad

1  latitude to limit the extent of discovery to protect a party or person from annoyance,

2  embarrassment, oppression, undue burden or other improper purposes.  Fed. R. Civ. P.

3  26(c)(1) and 26(g)(1)(B)(ii).

4      Under Fed. R. Civ. P. 45(c)(3)(B), regarding quashing or modifying a subpoena,

5  the rule states:  "To protect a person subject to or affected by a subpoena, the issuing

6  court may, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade

7  secret or other confidential research, development, or commercial information."

8  **B.    Application of Standards**

9      Plaintiffs allege that they "demanded a partnership accounting … which

10  Defendants have refused to provide."  Dkt. 1 at 7.  Plaintiffs also allege that Parnell

11  "breached fiduciary duties … by misappropriating and/or converting partnership assets,

12  and commingling with Samson's own accounts."  Dkt. 1 at 14.  Additionally, Plaintiffs'

13  first amended reply to Defendants' counterclaims explicitly pleads that partnership

14  monies were improperly funneled to Scott Parnell.  *See, e.g.,* Dkt. 14 at 25.  Given these

15  allegations, it is reasonable for Plaintiffs' counsel to examine Parnell's personal bank

16  records, as they may either contain relevant information or lead to information that is

17  relevant to the subject matter of this suit.

18      However, the Court recognizes the privacy concerns associated with the disclosure

19  of personal bank records, as expressed by Parnell.  Here, the parties have agreed to a

20  stipulated protective order that contains a provision for certain documents to be seen by

21  "Attorney's Eyes Only."  Dkt. 22 at 3.  The parties had not entered into this stipulated

22  protective order when the motion to quash was initially made.  In Parnell's reply, he

ORDER - 5

1   notes that, if the Court decides to release the records, he requests that the Court restrict

2   access "solely to Plaintiffs' counsel and counsel's professional advisors."  Dkt. 19 at 5.

3   In further discovery pleadings, Plaintiffs state that they have agreed "to treat Parnell's

4   personal financial information as Attorneys Eyes Only, pursuant to the Stipulated

5   Protective Order."  Dkt. 23 at 10.

6         The Court concludes that discovery of Parnell's personal bank records subject to

7   the "Attorney's Eyes Only" provision strikes the proper balance between allowing

8   discovery of evidence related to the subject matter of the case or evidence reasonably

9   calculated to lead to admissible relevant evidence and the privacy concerns associated

10  with personal bank records, given Plaintiffs' allegations in the complaint and first

11  amended reply to counterclaims.

### III. ORDER

13        Therefore, it is hereby **ORDERED** that Parnell's motion to quash is **DENIED**

14  (Dkt. 11), subject to the parties' stipulated protective order.

15        Dated this 26th day of June, 2013.

BENJAMIN H. SETTLE
United States District Judge