UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DERRAL FLEMING, et al,<br><br>    Plaintiffs,<br><br>    v.<br><br>SCOTT PARNELL, et al.,<br><br>    Defendants. | CASE NO. C13-5062 BHS<br><br>ORDER GRANTING DEFENDANTS' MOTION TO FILE A SURREPLY, DENYING IN PART DEFENDANTS' MOTION FOR A SPECIAL PROTECTIVE ORDER, AND RENOTING PLAINTIFFS' MOTION TO COMPEL |

This matter comes before the Court on Plaintiffs' motion to compel (Dkt. 23), Defendants' motion for entry of a special protective order (Dkt. 26), and Defendants' motion for leave to file a surreply to Plaintiffs' motion to compel (Dkt. 32). The Court has considered the pleadings filed in support of and in opposition to the various motions and the remainder of the file. For the reasons stated herein, the Court grants Defendants' motion for leave to file a surreply (Dkt. 32); grants in part and denies in part Defendants' motion for a special protective order (Dkt. 26); and reserves ruling on the Plaintiffs' motion to compel (Dkt. 23).

ORDER - 1

# I. PROCEDURAL & FACTUAL BACKGROUND

On January 29, 2013, Plaintiffs Darnell Fleming ("Fleming") and MAG Enterprises, LLC ("MAG") filed suit against Defendants Parnell and Samson Sports, LLC ("Samson"), a company which Parnell OWNS and controls. Dkt. 1. The complaint seeks (1) a declaration of noninfringement of copyrights; (2) declaration of invalidity of copyrights; (3) declaration of ownership of copyrights; (4) breach of fiduciary duties; and (5) dissolution of partnership, accounting and equitable distribution. *Id*. at 1. The allegations in the complaint involve the formation of a partnership between Plaintiffs and Defendants to design, manufacture and sell an American with Disabilities Act ("ADA") compliant access ramp system. Dkt. 1 at 5.

On June 6, 2013, Plaintiffs filed a motion to compel seeking production of Sampson's financial records and accounting database as well as Parnell's financial records and other discovery which relate to specific and numerous interrogatories and requests for production ("RFP"). Dkt. 23. On June 26, 2013, Defendants filed a brief in opposition to Plaintiffs' motion to compel combined with a motion for a special protective order regarding attorney's eyes only designated documents ("AEO"). Dkt. 26. On June 21, 2013, Plaintiffs replied to Defendants' brief in opposition to their motion to compel. Dkt. 30. On June 24, 2013, Defendants filed a motion for leave to file a surreply to Plaintiffs' motion to compel. Dkt. 32 and 32-1. On June 26, Plaintiffs filed response to Defendants' motion to file a surreply, asking the Court to strike Defendants' surreply and exhibits attached thereto. Dkt. 35.

## II. DISCUSSION

After review of the pleadings filed about these interrelated motions, the Court finds that it is not entirely clear which discovery disputes have been resolved by the parties and which are outstanding. This is in part due to Plaintiffs' reply to their motion to compel, which indicates that the items listed in Defendants' response as "Resolved" are not actually resolved because "Defendants have not actually produced records and documents." Dkt. 30 at 2. However, in the same brief, Plaintiffs indicate in a footnote that counsel received large amounts of documents via email on June 20, 2013, which could be some or all of the documents Plaintiffs seek.[1] *Id*. at 2, n. 6. Additionally, in Plaintiffs' reply, although they indicate that the items which Defendants have marked as "Resolved" are not resolved, they specifically address "Defendants' Table under Subsection C" as unresolved; that section solely discusses the requests for production directed at Samson. *Id*.

Given the present ambiguity as well as the lack of detail necessary for the Court to resolve some of these disputes, the Court will address some of the issues that are clearly unresolved and will require an additional submission by the parties as to which disputes still require Court intervention.

---

[1] Although Plaintiffs contend that whatever is in Defendants' email "document dump" constitutes late disclosure for which Defendants should be sanctioned (Dkt. 30 at 2, n. 6), whether the Defendants have produced documents requested by the Plaintiffs is important for the Court to consider in ruling on Plaintiffs' motion.

**A.   Motion to file Surreply to Plaintiffs' Motion to Compel**

Defendants seek leave to file a surreply to the Plantiffs' motion to compel "to respond to new arguments and alleged facts in Plaintiffs' Reply." Dkt. 32. Plaintiffs move to strike Defendants' proposed surreply on the basis of Western District Local Rule ("W.D. Local Rule") 7(g), arguing that rule "expressly prohibits the filing of surreply briefs except 'to strike material contained in or attached to a reply brief.'" *Id*. (*citing* W.D. Local Rule 7(g)). However, 7(g) does not speak to motion to leave to file a surreply; it discusses when the surreply itself may be filed with respect to requests to strike material contained in or attached to a reply brief. *See* W.D. Local Rule 7(g). Nor do Plaintiffs refute that they presented new arguments and facts in the reply, which are the bases on which Defendants seek to file additional briefing. *See* Dkt. 35. Additionally, Plaintiffs have responded to the proposed surreply, in the form of a motion to strike the surreply, which was properly noted as a "response" to Defendants' motion. Therefore, the Court has the opportunity to consider both parties' supplemental briefing when deciding the motion to compel and Defendants' motion for a special protective order, if it deems necessary. Thus, the Court grants the Defendants' motion to file a surreply and accepts the proposed surreply as Defendants' surreply. Dkt. 32.

**B.   Motion for a Special Protective Order**

The Plaintiffs' motion to compel and the Defendants' motion for a special protective order are related, as the Defendants' motion for special protective order is responsive to some of the Plaintiffs' requests for production addressed in their motion to compel. Dkt. 26. In the instant motion, Defendants request additional protection for

certain documents Plaintiffs seek to compel. Dkt. 26. The Court will address the Defendants' motion for a special protective order; some of the issues raised there are more fully developed than they are in the pleadings directed strictly at the motion to compel. To the extent the Court's ruling impacts items for which Plaintiffs seek production in their motion to compel, the Court will discuss how it will require the parties to address the overlap in the section entitled Motion to Compel. *See infra.*

Defendants made their motion for a special protective order regarding: (1) Defendant Parnell's personal financial records; (2) Defendant Samson's financial records for its boat tower and boat accessory business; (3) the technical drawings for Samson's boat towers and accessory business; (4) the compensation Samson pays its employees; (5) the redaction of those employees' Social Security numbers; and (6) the redaction of portions of Samson's credit card numbers. Dkt. 26 at 3.

### 1.  **Defendant Parnell's Personal Financial Records**

This issue has been resolved by the Court's order on Defendants' motion to quash the Unitus subpoena for Parnell's personal financial records. Dkts. 34, 37 and 38.

### 2.  **Samson's Financial Records Related to its Boat Tower and Accessory Business**

Defendants seek an order from the Court allowing them to produce Samson's financial information regarding the boat tower and accessories under an AEO designation with the additional protection that that information not be disclosed to anyone other than experts who are not engaged in, or in any way affiliated with, the boat tower and accessory business. Dkt. 26-1 at 3. Defendants maintain that they asked Plaintiffs to

agree to an AEO designation for Samson's database and related financial records because they contain confidential information about that business's costs (and therefore its profit margin), suppliers and customers. Dkt. 38 at 3. According to Defendants, Plaintiffs refused because they claim Fleming must examine all Samson's financial transactions in order to identify each partnership transaction. *Id.*

In summary, Samson argues that in contrast to Plaintiffs' position, partnership records, revenues and expenses have been separated from the boat tower and accessory business and Samson has already produced its bank records by virtue of the Unitus subpoena; therefore, there is no need for Mr. Fleming to review the documents relating Samson's boat tower and accessory business. Dkt. 38 at 3-4. However, Plaintiffs' accounting expert, Jennifer Murphy, explained the nature and usefulness of documents received from Defendants regarding the partnership as follows:

> Based on the content of the QuickBooks database, the dates on which the journal entries were created, and Ms. Kool's prior statements during my attempted inspection of Partnership records on May 22, this QuickBooks database was created by someone (allegedly Ms. Kool) on June 16-17, 2013. The database includes only records and transactions selected by Ms. Kool (or whoever actually created the database, which I do not know). They include large deductions for costs and expenses without any detail or supporting information. These are not the accounting records of the Partnership as they existed during the Partnership, nor are they adequate to perform a valid accounting of the Partnership due to the lack of underlying transaction detail and the lack of support for the assumptions made.

Dkt. 36 at 4 (Declaration of Jennifer Murphy). Even with the bank records provided by Unitus, Plaintiffs should not be forced to rely on Samson's Quickbooks summary created

ORDER - 6

over a period of a few days, in a suit where Plaintiffs' allegations[2] put Samson's internal accounting transactions as they relate to the partnership are at issue.  Therefore, it is unreasonable to put further restrictions on Plaintiffs' case preparation by forbidding Plaintiff and former partner, Fleming, from reviewing the requested records associated with Samson in order to assist Plaintiffs' experts in evaluating and disentangling partnership transactions from Samson's other business.  The Court finds that designating the documents as AEO, restricting their review to only those experts who are not competitors of Samson, but permitting Fleming to assist experts in reviewing the documents, strikes the proper balance between protecting Samson's business and allowing Plaintiffs to adequately prepare their case.  Defendants' motion for entry of a special protective order on this issue is granted with the qualifications set forth above.

### 3.     **Technical Drawings for Samson's Boat Towers and Accessory Products**

Defendants maintain that the technical drawings for Samson's boat towers and accessory products are not relevant to this dispute.  Dkt. 26 at 6.  Nonetheless, they have agreed to produce these documents under the AEO designation and requested additional protection of their drawings by asking Plaintiffs to "agree not to disclose them to experts

---

[2] In relevant part, the complaint also alleges that:
> Samson, and Parnell through his dominion and control of Samson and thus of the partnership, have breached fiduciary duties owed to Plaintiffs by misappropriating and/or converting partnership assets, failing to account for use and disposition of partnership assets, and commingling with Samson's own accounts, partnership assets; that these breaches directly, foreseeably, and proximately caused damage to Plaintiffs.

Dkt. 1 at 13-14.

who are competitors of Samson Sports." *Id*. Plaintiff provides no explanation as to why these drawings are necessary or how they could possibly lead to relevant information admissible at trial, yet they rejected Defendants' conditions for production. Unless the technical drawings are related to ramps, which could clearly be relevant to this suit, Samson is not required to produce any technical drawings for its boat tower and accessory business. However, to the extent the technical drawing are related to ramps, those documents should be produced under the AEO designation of the current protective order, as Plaintiffs' experts may need to legitimately review those drawings. Thus, Defendants' motion is granted, except as to Samson's ramp-related technical drawings.

### 4. Samson's Employee Compensation

Plaintiffs seek Samson employees' compensation information. Plaintiffs argue there is no legitimate basis to deny this request. Dkt. 37 at 3. Plaintiffs point out that, according to their accounting expert, Ms. Murphy, "Samson has claimed hundreds-of-thousands of dollars in expenses against the Partnership, including employee time and/or salaries, so this [request for production] falls under the same category as Samson's accounting and financial records." *Id*. Although Defendants maintain employee compensation information is not relevant (Dkt. 26 at 5), Samson has offered to disclose its employee compensation under an AEO designation, but Plaintiffs refused. Dkt. 38 at 5. Defendants maintain that Samson employee compensation information should be provided for attorney's eyes only with the additional restriction that the information not be disclosed to any expert that is a competitor of Samson. *Id*.

1  When Defendants are sued on issues concerning partnership accountings and there
2  is a dispute about the occurrence of misappropriation and/or conversion of partnership
3  assets, failures to account for use and disposition of partnership assets, and commingling
4  with Samson's own accounts partnership assets (Dkt. 1 at 13-14) and administrative or
5  personnel expenses form a part of the financial accounting, then that employee
6  compensation information may indeed be relevant.  The Court is sensitive to Defendants'
7  concern that disclosure of Samson employee compensation could be unnecessarily
8  disclosed to experts who compete with Samson.  The Court finds that the information
9  should be produced under the designation AEO, and only experts who are not engaged in
10 or affiliated with Samson's competitors will be permitted to review the employee
11 compensation information.  Therefore, Defendants' motion for entry of a special
12 protective order is granted as to this issue.

13 **5.  Samson Employees' Social Security Numbers**

14  Defendants seek to redact in their entirety employees' Social Security numbers
15 from documents produced.  Dkts. 26 at 5 and 26-1 at 3.  However, Defendants have told
16 Plaintiffs they would agreed to provide Samson employees' Social Security numbers
17 under an AEO designation (Dkts. 26 at 5 n. 2), given the highly sensitive nature of the
18 information, especially the last four digits which Plaintiffs seek.  Dkt. 38 at 6.  Plaintiffs
19 indicate that they need employee Social Security numbers to permit verification of
20 transactions and documents.  Dkt. 37 at 4. They maintain the numbers will be treated as
21 "confidential" under the current stipulated protective order and therefore the last four
22 digits will not be available to the public or publicized.  *Id*.

Given the highly sensitive nature of Social Security numbers and in the absence of a showing of necessity for this particularly private information of non-parties to this suit, the Court finds that the last four digits of Samson employees' Social Security numbers should be produced under the AEO designation of the current stipulated protective order. In the event that Plaintiffs are somehow prevented from verifying transactions or documents under the AEO designation, they may make a motion to have the designation removed. The Defendants' motion for entry of a special protective order to redact the entirety of its employees' social security numbers is denied.

### 6. Samson's Credit Card Numbers

Samson has four credit card accounts, each issued by a different company. Dkt. 38 at 6. Samson has produced all credit card statements, redacting all but the last four digits of three of the credit cards, excepting its American Express card where it redacted all but the last six digits. *Id*. Plaintiffs maintain they need the entire credit card numbers. Dkt. 37 at 4. They argue that under the current stipulated protective order this financial information is already considered confidential, thus there is no reason "why Plaintiffs and their attorneys should be subjected to stricter controls than wait staff at a local restaurant." *Id.* Plaintiffs maintain that redaction of credit card numbers is not required and only complicates document control and verification. *Id*.

The Court is surprised that the parties could not resolve this particular issue without resorting to the Court for assistance. Additionally, it seems rather disingenuous for Plaintiffs to claim that partial redaction of credit card numbers would somehow impede their document and verification control process (Dkt. 37 at 4), where there are

only four credit cards and their unredacted digits are entirely different. While the confidentiality provisions of the stipulated protective order may indeed be sufficient to protect the credit card account numbers from the public as Plaintiffs insist (*id*.), the Court acknowledges that credit card numbers are of a sensitive nature and in the absence of a showing of necessity for disclosure of the full numbers, the Court finds that production of credit card numbers with the Defendants' redactions and the designation of confidentiality under the terms of the stipulated protective order strikes the appropriate balance between providing the additional protections Defendants seek for sensitive information and permitting Plaintiffs to prepare their case. If these restrictions actually prevent Plaintiffs from verifying or controlling document production, they can move the Court to modify the protections for Defendants' credit card numbers. On this issue, the Defendants' motion is granted.

**C.     Motion to Compel**

As the Court stated above, it realizes Plaintiffs' motion to compel and Defendants' motion for a special protective order overlap. Thus, in light of both the Court's rulings on Defendants' motion for a special protective order and any resolutions at which the parties have arrived regarding the items Plaintiffs seeks through their motion to compel, the Court directs the parties to meet and confer by August 27, 2013 regarding outstanding discovery matters and attempt to resolve them. Additionally, by August 30, 2013, the parties shall submit a joint brief indicating which discovery disputes from Plaintiffs' motion to compel remain and summarize of the parties' respective positions as to each dispute.

**D.   Attorney Fee Awards**

The Court will consider the parties' requests for attorneys fees when it rules on the motion to compel.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

1. Defendants' motion for leave to file a surreply (Dkt. 32) is **GRANTED.**

2. Defendants' motion to for a special protective order (Dkt. 26) is **GRANTED in part** and **DENIED in part,** as set forth above.

3. The parties are directed to meet and confer and file a joint submission regarding the remaining discovery disputes from Plaintiffs' motion to compel in accordance with the schedule set forth above**.**

4. Plaintiffs' motion to compel (Dkt. 23) is renoted to August 30, 2013.

Dated this 23rd day of August, 2013.

BENJAMIN H. SETTLE
United States District Judge