1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
7                              AT TACOMA

8  DERRAL FLEMING, et al,

9                     Plaintiffs,                 CASE NO. C13-5062 BHS

10          v.                                    ORDER DENYING PLAINTIFFS'
                                                  MOTION FOR SPECIAL
11  SCOTT PARNELL, et al.,                        PROTECTIVE ORDER

12                    Defendants.

13

14         This matter comes before the Court on Plaintiffs' motion for a special protective

15  order (Dkt. 41).  For the reasons stated herein, the Court denies the Plaintiffs' motion.

16                    **I. PROCEDURAL & FACTUAL BACKGROUND**

17         On January 29, 2013, Plaintiffs Derral Fleming ("Fleming") and MAG

18  Enterprises, LLC ("MAG") filed suit against Defendants Scott Parnell ("Parnell") and

19  Samson Sports, LLC ("Samson"), a company which Parnell owns and controls. Dkt. 1.

20  The complaint seeks (1) a declaration of noninfringement of copyrights; (2) declaration

21  of invalidity of copyrights; (3) declaration of ownership of copyrights; (4) breach of

22  fiduciary duties; and (5) dissolution of partnership, accounting and equitable distribution.

*Id.* at 1.  The allegations in the complaint involve the formation of a partnership between Plaintiffs and Defendants to design, manufacture and sell an American with Disabilities Act ("ADA") compliant access ramp system.  Dkt. 1 at 5.

On July 18, 2013, Plaintiffs filed a motion for a special protective order requesting that Vicki Ballou ("Ballou"), an attorney for and sister of Defendant Parnell, be excluded from access to materials disclosed by Plaintiffs as Attorneys Eyes Only (AEO) under the existing stipulated protective order.  Dkt. 41.  On July 24, 2013, Defendants filed a response opposing Plaintiffs' motion for a special protective order.  Dkt. 43.  Plaintiffs filed no reply brief.

## II. DISCUSSION

### A.      Motion for Special Protective Order

Plaintiffs move the Court for a special protective order precluding Ballou from accessing materials disclosed by Plaintiffs as AEO under the existing protective order. Dkt. 41 at 1.  Plaintiffs argue that the AEO "classification would apply at least to appropriate sensitive competitive information of MAG Enterprises, and to Mr. Fleming's personal financial records."  *Id.* at 2.  In sum, Plaintiffs provide four reasons for seeking this protection: (1) Ballou is Parnell's sister and has been involved in providing "inside legal counsel" to Parnell and Samson for years; (2) Ballou filed copyright restrictions on technical drawings, which  are "a core part of the dispute;" (3) in a state suit, Ballou drafted the complaint and supporting declaration of Parnell relating to the partnership, which allegedly contained false statements, and she contacted law enforcement to seize Fleming's inventory on behalf of Samson, "which they admit was Partnership property" ;

1  and (4) Plaintiffs have specifically alleged Ballou participated in the offending actions,

2  making her a material witness in this suit. *Id*. at 3-4.

3        Defendants maintain that Plaintiffs' cited reasons for inadvertent disclosure are

4  unsupported by case law. Dkt. 43 at 6-10. That her status as a family member poses a

5  risk of inadvertent disclosure is not supported by citation to any case. *Id*. at 6.

6  Additionally, in summary, the assertion that Ballou "has been involved in providing

7  inside legal counsel to Parnell and … Samson for many years" is also insufficient

8  because Ballou has never been in-house counsel and her firm has put in fewer than 50

9  hours per year related to disputes involving Fleming. Dkt. 43 at 7. Defendants also

10  argue that Plaintiffs' contention that Ballou will be a "material witness" does not support

11  a risk of inadvertent disclosure, or at least they never articulate how. *Id*. at 10. They

12  maintain this is an attempt to disqualify her from the discovery portion of the case, which

13  is not supported by 3.7(a) of the Washington Rules of Professional Conduct, which

14  address disqualification of a lawyer who may be called as a witness. *Id*. at 11-13.

15  Defendants maintain that if the Court grants Plaintiffs' motion they will suffer substantial

16  hardship, in the form of increased cost and delay, because other lawyers at Ballou's firm

17  will be forced to review documents that Ballou has already analyzed. *Id*. at 9.

18     **1.**     **Standards for Limiting on Lawyer's Access to Documents**

19  Fed. R. Civ. P. 26(c) authorizes parties to seek a limited protective order:

20        (1) In General....The court may, for good cause, issue an order to
protect a party or person from annoyance, embarrassment, oppression, or

21  undue burden or expense, including one or more of the following:

                    ***

22

1      (B) specifying terms, including time and place, for the disclosure or discovery;

2                     ***

      (E) designating the persons who may be present while the discovery

3 is conducted.

4    The parties agree that *U.S. Steel Corp. v. United States*, 730 F.2d 1465

5 (Fed. Cir. 1984), is the leading case regarding protective orders seeking to limit a

6 lawyer's access to documents, and that in *Brown Bag Software v. Symantec Corp.*, 960

7 F.2d 1465 (1992), *cert. denied*, 506 US 869 (1992), the Ninth Circuit adopted the

8 analysis in *U.S. Steel*.  *See* Dkts. 41 at 2 and 43 at 5.

9    In *Avocent v. Redmond Corp. v. Rose Electronics, Inc.*, 242 F.R.D. 547 (W.D.

10 Wash. 2007), Judge Marsha Pechman properly summarized the legal standard as set forth

11 in the above cited cases:

12    The scope of protective orders seeking to limit access to attorneys to confidential information is governed by the principles set down by the Federal Circuit in *U.S. Steel Corp. v. United States*, 730 F.2d 1465

13 (Fed.Cir.1984) (holding that court erred when it prohibited access to confidential information based on attorney's status as "in-house" counsel

14 and requiring case-by-case and attorney-by attorney determination). As explained by the Federal Circuit, the policy underlying a restriction on

15 counsel's access to confidential materials is the concern that counsel might inadvertently disclose the confidential material learned during the course of

16 litigation.  *See id*. at 1468.  The competing interests to be evaluated in determining the outcome of such a dispute are one party's right to broad

17 discovery and the other party's ability to protect its confidential materials from misuse by competitors.  *See Brown Bag Software v. Symantec Corp.*,

18 960 F.2d 1465, 1470 (9th Cir.1992).  The inquiry focuses on whether counsel can be a deemed a "competitive decision-maker," which the

19 Federal Circuit says is shorthand for "a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and

20 participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a

21 competitor."  *U.S. Steel*, 730 F.2d at 1468 n. 3. Whether counsel is "in-house" or "retained" is not dispositive on the issue: "denial or grant of

22

ORDER - 4

access ... cannot rest on a general assumption that one group of lawyers is more likely or less likely inadvertently to breach their duty under a protective order." *See id*. at 1468.  In addition to determining whether an attorney is a competitive decision-maker, courts must also consider whether denying that attorney access to confidential material would work a substantial hardship on that attorney's client.  *Id*.

242 F.R.D. at 577.

### 2.    Application of Standard

In evaluating the risk of Ballou's inadvertent disclosure of information under the AEO designation, the query on which the Court focuses is whether Ballou can be deemed a "competitive decision-maker." *U.S. Steel*, 730 F.2d at 1468 n. 3.  Defendants are correct:  Plaintiffs do not cite any case indicating that a familial relationship constitutes a classification which courts have considered in determining whether an inadvertent disclosure is more likely to occur in this context (Dkt. 43 at 6) or any other analogous context.  Simply because counsel is related to a client does not alone make the attorney more likely to be a "competitive decision-maker," as defined in *U.S. Steel*, 730 F.2d at 1468 n. 3.

Although Plaintiffs make the bare assertion that Ballou has worked as "inside counsel to Parnell and Samson" for "many years," they provide no evidence to demonstrate that to the Court.  Dkt. 41 at 3-4.  Defendants provide a sworn declaration from Ballou that indicates that before the dispute arose between the parties, her firm provided on average less than 50 hours of legal services per year.  Dkt. 44 at 2.  She states she has never been employed by Defendants, presumably in the "in-house" counsel or employer/employee sense.  *Id*.  However, whether Ballou was "in-house" or "retained"

1   counsel is not dispositive of whether the attorney is a competitive decision-maker or

2   likely to inadvertently disclose confidential information: "denial or grant of access ...

3   cannot rest on a general assumption that one group of lawyers is more likely or less likely

4   inadvertently to breach their duty under a protective order." *U.S. Steel*, 730 F.2d at 1468.

5   Whether Ballou qualifies as a competitive decision-maker largely depends upon the

6   nature of services she was providing Defendants and how, if at all, she was involved in

7   giving advice about and participating in Defendants' business decisions vis a vis their

8   competitors. *U.S. Steel*, 730 F.2d at 1468 n. 3.

9       Plaintiffs' only substantive argument that Ballou was involved in competitive

10  decision-making on behalf of Defendants is the fact that Ballou filed copyrights for the

11  "Fredrickson" drawings, which are at issue in this case, and drafted the assignments for

12  those drawings to Samson after the partnership had dissolved. Dkt. 41 at 4. Plaintiffs

13  maintain that these "registrations were inaccurate at best." *Id*. In addition, Plaintiffs

14  allege that Ballou drafted the state complaint and supporting declaration of Parnell, in a

15  previous lawsuit filed in Washington state court. *Id*. Plaintiffs' latter two contentions are

16  not substantiated with sufficient evidentiary support.

17      However, Ballou does admit to filing the aforementioned copyright registration

18  application on the Fredrickson drawings and drafting the assignment of those drawings to

19  Samson from the partnership after the partnership had dissolved. Dkt. 41-2 at 1-2

20  (Plaintiffs' Requests for Admission). Ballou's services in this regard were certainly

21  rendered to protect her clients' business interests, i.e. infringement of copyrighted

22  drawings by competitors.

1    Unlike in-house counsel in *Brown Bag*, against whom a special protective order

2  was entered, there is no indication that Ballou acts as Defendants' "sole legal advisor and

3  personnel manager," was responsible for advising her employer "on a gamut of legal

4  issues, including contracts, marketing and employment." 960 F.2d at 1471.  There is also

5  no indication that in Ballou's role as retained counsel she has advised or will necessarily

6  be advising on trade secrets, product design or pricing such that Ballou will be in the

7  "untenable position" of having to refuse to provide counsel to Defendants on a host of

8  contract, employment and competitive marketing decisions lest she inadvertently reveal

9  what Plaintiffs have only vaguely described as "sensitive competitive information of

10  MAG Enterprises."[1]  *Id.*  As to Mr. Fleming's personal financial information, Plaintiff

11  does not indicate how it qualifies as the type of information that needs additional

12  protection or how inadvertent disclosure would result in "misuse by competitors."  *See*

13  *Brown Bag*, 960 F.2d at 1470.

14    Finally, that Plaintiffs have identified Ballou as a "material witness" does not

15  compel the Court to sanction removal of one of Defendants' attorneys from full

16

17  _____

18    [1] Plaintiffs do very little to either define the sensitive nature of the type of information for
which they seek a protective order or describe what types or how potential damage will come to

19  Plaintiffs were such information inadvertently disclosed by its alleged competitor, Ballou.  *See*
Dkt. 41.  Further, what Plaintiffs term MAG's "sensitive competitive information," without the

20  identification of even one specific type of sensitive competitive information that has been or will
be produced, is too vague for the Court to even weigh the competing interests.  In Defendants'

21  response, they made note of Plaintiffs' vagueness, referencing their "yet to be identified"
competitive material (Dkt. 43 at 10). Plaintiffs did not file a reply indicating that their vagueness

22  is or should be considered a non-issue.

ORDER - 7

1  participation in case preparation (Dkt. 41 at 4), especially in the absence of facts

2  sufficient to show that Ballou is a competitive decision-maker.

3      Given these facts, the Court finds that the Plaintiffs have not met their burden of

4  showing good cause to exclude Ballou from reviewing Mr. Fleming's personal financial

5  information or MAG's information.

6  **B.    Attorney Fee Award**

7      The Court denies Defendants' request for an award of attorney fees in

8  connection with this motion.  The award is denied because this is the type of protective

9  order that requires the Court to weigh competing interests of the parties.  Further,

10  although Plaintiffs failed to meet their burden, their concern was justified, and their

11  question regarding Ballou was reasonably submitted for the Court's consideration.

12                          **III. ORDER**

13      Therefore, it is hereby **ORDERED** that Plaintiffs' motion for a special protective

14  order (Dkt. 41) is **DENIED**.

15       Dated this 28th day of August, 2013.

16

17

18                          BENJAMIN H. SETTLE
                            United States District Judge

19

20

21

22