UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DERRAL FLEMING, and MAG ENTERPRISES, LLC,

　　　　　　　Plaintiffs,

v.

SCOTT PARNELL, and SAMSON SPORTS, LLC,

　　　　　　　Defendants.

CASE NO. C13-5062 BHS

ORDER DENYING CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on the parties' cross motions for partial summary judgment (Dkts. 89, 94). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby denies the motions for the reasons stated herein.

**I. PROCEDURAL HISTORY**

This case involves a dispute between former business associates. Derral Fleming ("Fleming") is the owner of MAG Enterprises, LLC ("MAG"), collectively referred to as Plaintiffs. Plaintiffs sometimes do business under the name "Northwest Access Products." Dkt. 98 at 2; 109 at 7. Scott Parnell ("Parnell") is the owner of Samson

Sports, LLC ("Samson"), collectively referred to as Defendants. Dkt. 98 at 2; Dkt. 97-2 at 3.

### A. Complaint and Counterclaims

On January 29, 2013, Plaintiffs filed a civil complaint alleging that: (1) Defendants do not own the copyrights asserted and Plaintiffs did not infringe on any copyright owned by Defendants; (2) the copyrights are invalid; (3) the copyrights are actually owned and authored by Fleming; (4) Defendants breached fiduciary duties to Plaintiffs by misappropriating and/or converting partnership assets; and (5) the partnership has dissolved and the Court should equitably distribute the partnership assets, including the disputed copyrights ("Pl. Fed. Claims"). Dkt. 1.

On March 6, 2013, Defendants counterclaimed for: (1) copyright infringement against Plaintiffs before registration; (2) copyright infringement against Plaintiffs after registration; (3) violations of the Lanham Act by false designation of origin, false advertising, and reverse passing off; (4) violations of Washington's Unfair Competition Act by false advertising and reverse passing off; (5) breach of fiduciary duty by conversion and misuse of partnership property against Fleming; (6) breach of fiduciary duty by concealment of overcharges against Fleming; (7) breach of the duty of good faith and fair dealing by conversion and misuse of partnership property against Fleming; (8) breach of the duty of good faith and fair dealing by concealment of overcharges against Fleming; (9) improper accounting against Fleming; (10) conversion of partnership property against Plaintiffs; (11) tortuous interference with business relations against

Plaintiffs; (12) unjust enrichment against Plaintiffs; and (13) breach of contract against MAG ("Def. Fed. Claims"). Dkt. 7.

On November 1, 2012, before Plaintiffs filed this federal court action, Defendants in this case initiated an action in Clark County Superior Court, seeking to bar Plaintiffs from using disputed technical drawing or any similar drawings. *Samson Sports, LLC v. MAG Enterprises, LLC, et al.*, 12-2-04160-5 (Clark County Sup. Ct. 2012); Dkt. 95-14 at 1; Dkt. 95-20. In the First Amended Complaint in the state court action, Defendants made the same claims as in Def. Fed. Claims 4–12. Dkt. 95-19. It is unclear which claims Plaintiffs alleged in state court because no answer or counterclaim to the First Amended Complaint was provided by either party. *See* Dkt. 97-9 (includes only the first seven pages of the *original* answer and counterclaims in the state court action, which includes Pl. Fed. Claim 4). On December 21, 2012, the state court judge placed all the disputed drawings into escrow. Dkt. 95-20. The case was stayed with respect to the parties' substantive claims and counterclaims, but the Superior Court of Clark County apparently issued an order retaining jurisdiction to resolve "certain non-substantive issues." Dkt. 97 at 2.

**B.     Motions for Partial Summary Judgment**

On February 28, 2014, Plaintiffs filed their Motion for Partial Summary Judgment, arguing for the dismissal of all Defendants' counterclaims. Dkt. 89. The same day, Defendants filed their Motion for Partial Summary Judgment, requesting that the Court find in their favor on Def. Fed. Claims 1–4. Dkt. 94. Defendants assert that a finding in their favor on Def. Fed. Claims 1–2 necessitates dismissal of Pl. Fed. Claims 1–3. *Id.*

## II. FACTUAL BACKGROUND

A.  **Undisputed Facts**

The business dispute in this case relates to the design, manufacture, and sale of handicap access ramps compliant with the Americans with Disabilities Act ("ADA"). Dkts. 89, 94. Headed by Parnell, Samson is a metal fabrication business that principally produces wakeboard towers. Dkt. 98 at 2. Fleming's company, MAG, designs, manufactures, and installs anchor holders and handicap access modules. Dkt. 97-2 at 3.

In 2009, Fleming approached Parnell at a boat show and proposed that the two manufacture and sell ADA handicap access ramps together. Dkt. 98 at 2; Dkt. 97-2 at 4–5; Dkt. 90 at 2–3. Fleming proposed that he would sell the ramps to his contacts for 49% of the profits and Parnell would receive the remaining 51%. *Id.* Parnell agreed, but the agreement was never memorialized in writing. Dkt. 98 at 2. Fleming agreed to contribute to design and manufacturing labor, while Parnell agreed to pay labor and startup costs, which later included payments to engineer Kevin Frederickson ("Frederickson"). Dkt. 90 at 3; Dkt. 98 at 2. Later in the relationship, MAG was contracted to install many of the ramp systems and was separately invoiced at $500 per installation. Dkt. 90 at 5; Dkt. 107 at 2–3.

After developing a prototype, the parties sought an engineer to create technical drawings and construction details, ultimately settling on Frederickson. Dkt. 90 at 3; Dkt. 106 at 1. There is no dispute that Frederickson drew the technical drawings on which this litigation is based. Dkt. 97-2 at 4. Samson later applied for copyright registrations for

these drawings, after Frederickson transferred them to Samson by written instrument. Dkt. 84.

By late 2010, Parnell began to suspect overcharging by MAG and Fleming complained that there had been no distribution of profits to him, which caused unrest in the relationship. Dkt. 107 at 3; Dkt. 90 at 6. In January 2012, Fleming told Parnell that he "wanted out." Dkt. 90 at 6. The parties went their separate ways but disputed how to liquidate and divide assets and inventory, whether non-compete provisions applied, and which parties would continue using the drawings. Dkt. 90 at 6–7; Dkt. 107 at 3–4. This dispute developed into the state court litigation, and then into the filing of this lawsuit. *Id.*

**B.   Disputed Facts**

At the center of this case, the parties dispute: (1) who owned the copyrighted drawings prior to the parties' state court stipulation that their relationship was a partnership, (2) who could use the copyrighted drawings on behalf of the partnership, (3) who authored the copyrights, and (4) any partnership agreement that governed the relationship. *See* Dkt. 89; Dkt. 94. In addition, there are several specific factual disputes, as outlined herein.

Plaintiffs argue that the copyrighted drawings were authored by the design group, including Fleming; Defendants contend that Frederickson alone authored the drawings. Plaintiffs contend that, before meeting Parnell, Fleming authored his own ramp drawings, which were used to build a prototype product and later relied on by Frederickson. Dkt. 90 at 3–4. Plaintiffs further allege that Frederickson was directed by multiple people,

including Fleming, to make changes to the drawings throughout the drafting process. Dkt. 90 at 3. Specifically, Plaintiffs state that the "particular views" of the drawings were directed by the "design group," and that Fleming directed additions and modifications of "elements of the drawing." Dkt. 90 at 3–4. In contrast, Defendants claim that Frederickson revised and updated the drawings to increase functionality, meet building code requirements, and minimize the amount of aluminum. Dkt. 106 at 2. Defendants state that the design group made suggestions for changing the drawings, some written but mostly verbal, and Frederickson would decide how to incorporate these changes. Dkt. 106 at 3–4. Defendants define the "design group" as Kevin Frederickson, Scott Parnell, Mike Wallway, and Derral Fleming. Dkt. 105 at 13.

Another issue among the parties arises out of the characterization of the business relationship. Plaintiffs allege that the business relationship was always a partnership, while Defendants allege that Fleming was an independent contractor at the beginning of the relationship. Dkt. 90 at 3; Dkt. 107 at 2. Parnell asserts that he told Fleming at an initial meeting that he was not interested in a partnership. Dkt. 107 at 2. However, while litigating this issue in state court, Defendants stipulated that the relationship was a partnership. Dkt. 95-12 at 1–2. The stipulation makes no reference to effective dates and Defendants argue that the relationship was not a partnership before the date of the stipulation. *Id.*

With regard to damages, Plaintiffs allege that Defendants were not paying Fleming's earned distribution and that requests to see the business accounting were denied. Dkt. 90 at 6. Plaintiffs contend that Fleming received an $8,000 check but there

was no documentation or explanation for it.  Dkt. 90 at 6.  Defendants contend that Fleming had not been paid because there was no revenue to distribute and that the $8,000 was an advance.  Dkt. 107 at 3.  The note on the front of the check only states "Ramp Sales."  Dkt. 107-3 at 2.

Plaintiffs seek summary judgment declaring that Defendants comingled partnership property with their own.  Dkt. 89 at 40.  Samson maintains that, although Samson funds and partnership funds were placed in the same bank account, they were separately identified in accounting records through QuickBooks software.  Dkt. 107 at 5.

Lastly, Defendants allege that Plaintiffs began selling the ramp systems created with Defendants without Defendants' knowledge sometime in the spring of 2012.  Dkt. 98 at 2–3.  Plaintiffs agree that they covered up the Samson name and logo on the drawings with MAG's name and logo, but inexplicably argue that they only used copies and never had possession of the original drawings.  Dkt. 97-1 at 2–3; Dkt. 90 at 9.  Defendants also allege that in January 2014 they were contacted by the Portland Public School District to report a broken ramp.  Dkt. 98 at 3.  Defendants state that they inspected the ramp and determined that it was a Samson design, but had not been fabricated by Samson.  *Id.*  Defendants state that approximately $270.00 in costs repairing said ramp and a loss of goodwill resulted.  *Id.*

### III. SUMMARY JUDGMENT

The principal issue before the Court is whether genuine issues of material fact exist with regard to each of Defendants' counterclaims. *See supra* p. 2, lines 10-22.

1  Plaintiffs request judgment in their favor on these counterclaims and request that they be
2  dismissed. Defendants request summary judgment in their favor on Def. Fed. Claims 1–4.
3        Two threshold matters warrant the Court's attention before the merits of the
4  motions may be reached.  First, Plaintiffs object to Defendants' use of an expert report on
5  accounting and damages on the bases of lack of personal knowledge, relevance, and that
6  it provides legal conclusions.  Dkt. 109 at 3.  Plaintiffs did not move to strike the
7  material, and even assuming they had, such a motion should be denied at this stage of the
8  proceeding.  The Court notes Plaintiffs' objections and will accord that information the
9  appropriate weight.
10       Second, Defendants moved to strike settlement communications mentioned in
11 Plaintiffs' motion, pursuant to "FRCP 408," which the Court construes as a clerical error
12 meant to reference ER 408.  Dkt. 105 at 4 (citing Dkt. 89 at 9).  Under ER 408, evidence
13 of settlement offers is inadmissible if offered for the purpose of proving or disproving the
14 amount of a disputed claim or to impeach by a prior inconsistent statement or a
15 contradiction.  It is unclear for what purpose Plaintiffs included settlement discussions
16 because their brief only mentions this information in the context of factual background.
17 Dkt. 89 at 6.  To the extent the information was mentioned for an improper purpose, the
18 motion is granted.
19 **A.    Summary Judgment Standard**
20       Summary judgment is proper only if the pleadings, the discovery and disclosure
21 materials on file, and any affidavits show that there is no genuine issue as to any material
22 fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

1  The moving party is entitled to judgment as a matter of law when the nonmoving party

2  fails to make a sufficient showing on an essential element of a claim in the case on which

3  the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

4  323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

5  could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

6  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

7  present specific, significant probative evidence, not simply "some metaphysical doubt").

8  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

9  if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

10  jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

11  U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

12  626, 630 (9th Cir. 1987).

13        The determination of the existence of a material fact is often a close question. The

14  Court must consider the substantive evidentiary burden that the nonmoving party must

15  meet at trial—e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

16  U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

17  issues of controversy in favor of the nonmoving party only when the facts specifically

18  attested by that party contradict facts specifically attested by the moving party.  The

19  nonmoving party may not merely state that it will discredit the moving party's evidence

20  at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

21  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

22

nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.   Defendants' Copyright Infringement Claims**

**1.   Parties' Arguments**

Plaintiffs assert that Defendants' copyright infringement claims are deficient because: (1) Defendants' multiple registrations, altering the content and publication status of earlier registered works, revoked and cancelled prior registrations; (2) Defendants' asserted copyright registrations are invalid because Defendants filed them with the intent to block Fleming from using the drawings; (3) Frederickson's drawings lack protectable original expression; (4) statutory damages, enhanced damages, and attorney's fees are not available to Defendants; (5) Defendants fail to show a nexus between the alleged infringement and the alleged damages; and (6) the copyright registrations are unenforceable due to Defendants' inequitable conduct. Dkt. 89 at 21–40.

Defendants argue that Plaintiffs have infringed on their copyrights because: (1) Fleming has admitted that he copied the disputed drawings; (2) based on the certificate of registration, Defendants owned the copyrights; (3) the minor errors made in Defendants' registration do not invalidate the copyright under Ninth Circuit case law; (4) the disputed drawings are copyrightable subject matter; (5) Frederickson is the author of the disputed drawings; (6) the partnership owns the copyrights in the disputed drawings; (7) even if the disputed drawings are derivative of Plaintiffs' work, Plaintiffs do not own the copyright in the material to which Frederickson contributed; and (8) Plaintiffs willfully infringed on the disputed copyrights. Dkt. 94 at 11–21.

### 2.     Legal Standard

Under 17 U.S.C. § 106, a copyright owner "has the exclusive rights":

> (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) ... to perform the copyrighted work publicly; (5) ... to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

Pursuant to 17 U.S.C. § 501, "the legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it."

To prove copyright infringement claims, Defendants must show: (1) ownership of a valid copyright, and (2) that Plaintiffs copied protected elements of Defendants' work. *L.A. Printex Industries, Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012).

### 3.     Analysis

As an initial matter, the Court gives full faith and credit to the parties' state court stipulation entered on September 27, 2013, pursuant to 28 U.S.C. § 1738. Therefore, the Court treats the business relationship in this case as a partnership (the "Partnership"), at least after the date on which the state court entered the stipulation. Furthermore, the parties agree that "Parnell/Samson" was the managing partner of the Partnership. Dkt. 105 at 10; Dkt. 109 at 6.

The parties seem to agree that the copyrights were owned by the Partnership after September 27, 2013. *See* Dkt. 94; Dkt. 109. However, the parties dispute who owned the copyrights before that date, and who was empowered to use the copyrights on behalf of

1 the Partnership. *Id.* Fleming does not dispute copying the drawings, but asserts that his
2 use was authorized because he only used the unprotectable data contained in the
3 drawings, not the drawings themselves. Dkt. 109 at 14. Parnell claims that he was
4 empowered to use the drawings as the non-dissociated partner, who was assigned the
5 drawings by Frederickson. Dkt. 105 at 35.

6 Defendants contend that there are many material issues of fact regarding
7 ownership, authorship, authority to file applications for copyright registrations, actual
8 damages, and whether Defendants' use of the copyrighted material was authorized. *Id.*
9 The Court agrees. Plaintiffs fail to show that these issues may be resolved as a matter of
10 law without resolving the underlying factual disputes. Therefore, with regard to
11 Defendants' copyright counterclaims (Def. Fed. Claims 1–2), both parties' partial
12 summary judgment motions are denied.

13 **C.    Defendants' Lanham Act Claims**

14     **1.     Parties' Arguments**

15 Plaintiffs also assert that Defendants' unfair competition and Lanham Act claims
16 are deficient because (1) Defendants' Northwest Access Products website is literally true;
17 (2) Defendants have no evidence to establish distinctiveness of the ramp design; and (3)
18 competitor depictions of identical products are not false advertising. Dkt. 89 at 41–44.
19 Plaintiffs also contend that Defendants' tortuous interference claims should be dismissed
20 because a dissolved partnership has no expectancy interest in new post-dissolution
21 business, and Defendants produced no contract or other agreement obligating MAG to
22 conduct business with the Partnership post dissolution. Dkt. 89 at 44–45.

1    Defendants allege that Plaintiffs passed off Samson/Partnership ramps, drawings,
2    and engineering as its own. Dkt. 94 at 23–26. Based on those allegations, Defendants
3    argue that Plaintiffs committed trademark infringement by "reverse passing off,"
4    meaning misrepresenting another's goods or services as their own. In addition,
5    Defendants submit that their false advertising claim has also been proven as a matter of
6    law because: (1) Plaintiffs admit to posting photographs of Defendants' manufactured
7    ramp modules on its website; (2) more than two dozen of such photographs
8    misrepresented Plaintiffs as more experienced and sophisticated than in reality, and such
9    misrepresentation was likely to deceive; (3) these photographs were advertisements in
10   interstate commerce because they were posted on the Internet; and (4) the Partnership
11   was injured as a result of sales diversion and "a lessening of goodwill associated with its
12   products." Dkt. 94 at 25–26.

13   **2.     Legal Standard**

14   According to their summary judgment motion, counterclaims, and other filings,
15   Defendants allege only two types of claims under the Lanham Act: reverse passing off
16   and false advertising. *See, e.g.*, Dkts. 7, 94. To clarify, Plaintiffs seem to confuse these
17   claims with the standard claim of trademark infringement, which they correctly state was
18   not pled in this case. *See* Dkt. 109 at 21.

19   Reverse passing off claims require proof of: (1) the origination of the goods or
20   services in question with the Defendants; (2) Plaintiffs' false designation of the origin of
21   those goods or services; (3) the likelihood of consumer confusion caused by the
22   Plaintiffs' false designation of origin; and (4) harm to the Defendants caused by the

Plaintiffs' false designation of origin. *See, e.g., Lipton v. The Nature Co.,* 71 F.3d 464, 473 (2d Cir. 1995); Kurtis A. Kemper, *Application of Doctrine of "Reverse Passing Off" Under Lanham Act,* 194 A.L.R. Fed. 175, § 3 (2004).

Under 15 U.S.C. § 1125(a)(1)(B), a party alleging false advertising must prove the following elements:

> (1) in its ... advertisements, defendant made false statements of fact about its product or the product of another;
> (2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience;
> (3) the deception is material, in that it is likely to influence the purchasing decision;
> (4) defendant caused its falsely advertised goods to enter interstate commerce; and
> (5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the good will which its products enjoy with the buying public.

*Cook, Perkiss & Liehe v. N. Cal. Collection Srv., Inc.,* 911 F.2d 242, 244 (9th Cir. 1990) (quoting *Skil Corp. v. Rockwell Int'l Corp.,* 375 F.Supp. 777, 783 (N.D. Ill. 1974)).

**3.      Analysis**

Under Defendants' reverse passing off claim, the same issues of fact presented in the copyright claims exist with regard to the origin of the goods: who authored the drawings, who owned the drawings before September 27, 2013, and who was authorized to use the drawings after Fleming and Parnell went their separate ways. In addition, there are issues of fact about whether any consumer confusion was attributable to Plaintiffs, Defendants, or both.

Similarly, the same issues of ownership arise under Defendants' false advertising claim. The falsity of any advertisement depends on who owned or had rights to the

drawings, ramps, and related information. Furthermore, there has been no evidence presented on whether a substantial segment of customers may have been deceived. Both parties' partial summary judgment motions on Defendants' Lanham Act claims (Def. Fed. Claim 3) are denied.

**D.     Defendants' State Law Claims**

In addition to its copyright and Lanham Act claims, Defendants alleged ten other claims arising out of state law (Def. Fed. Claims 4–13), nine of which were pled in state court (Def. Fed. Claims 4–12).

Each of the state law claims is dependent on the factual resolution of the federal claims, and present many of the same issues of fact as previously outlined. Therefore, summary judgment on these claims is premature, and the Court denies Plaintiffs' motion with regard to Defendants' state law counterclaims.

In addition, although neither party has addressed the issue of bifurcation, the Court may raise the issue *sua sponte*. *In Re Paoli R.R. Yard PCB Litig.,* 113 F.3d 444, 452 n.5 (3d Cir. 1997). Fed. R. Civ. P. 42(b) authorizes this Court to order a separate trial of any claim "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). It is within a court's discretion whether to order separate trials for separate issues in the same case. *Marks Food Corp. v. Barbara Ann Baking Co.,* 274 F.2d 934, 936 (9th Cir. 1959). "Bifurcation is particularly appropriate when resolution of a single claim or issue could be dispositive of the entire case." *Drennan v. Maryland Casualty Co.*, 366 F. Supp. 2d 1002, 1007 (D. Nev. 2005) (citing *O'Malley v. U.S. Fidelity & Guaranty Co.,* 776 F.2d 494, 501 (5th Cir. 1985)).

1  In this case, the Court is inclined to exercise its discretion and bifurcate the state
2  law claims and the federal law claims.  The state law claims are duplicative of the stayed
3  state court action and predominate the issues in this case.  Moreover, it appears that
4  resolution of the federal claims would expedite and economize this dispute.  Therefore,
5  the parties shall meet and confer on this proposal, and then submit a joint brief including
6  both parties' positions, to be filed no later than April 25, 2014.

## IV. ORDER

Therefore, it is hereby **ORDERED** that:

1. Defendants' Motion for Partial Summary Judgment (Dkt. 94) and Plaintiffs' Motion for Partial Summary Judgment (Dkt. 89) are **DENIED** with regard to Defendants' federal counterclaims (Def. Fed. Claims 1–3).

2. Plaintiffs' Motion for Partial Summary Judgment (Dkt. 89) is **DENIED as premature** with regard to Defendants' state law counterclaims (Def. Fed. Claims 5–13).

3. All of Plaintiffs' claims are not addressed by this order, and these claims may proceed.  Given denial of both motions, all of Defendants' counterclaims may also proceed.

4. Defendants' Motion to Strike (Dkt. 105) is **GRANTED in part and DENIED in part** as follows: To the extent that Plaintiffs offered settlement discussions for an improper purpose the motion is **GRANTED**, and for other purposes it is **DENIED**.

5. The parties shall meet and confer and then submit a joint brief including both parties' positions, to be filed no later than Apri 25, 2014.

Dated this 17th day of April, 2014.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge